# 22-1426-cr

# United States Court of Appeals

*for the*

# Second Circuit

---

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

GHISLAINE MAXWELL, AKA Sealed Defendant 1,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR REHEARING EN BANC

ARTHUR L. AIDALA
DIANA FABI SAMSON
AIDALA BERTUNA & KAMINS PC
*Attorneys for Defendant-Appellant*
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011

CP COUNSEL PRESS   (800) 4-APPEAL • (334032)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND RULE 35(B)(1) STATEMENT ........................................ 1

ISSUE PRESENTED ...................................................................... 3

    BACKGROUND ..................................................................... 3

    PANEL DECISION ................................................................. 5

ARGUMENT ............................................................................ 7

    EN BANC REVIEW IS NECESSARY TO DETERMINE
    WHETHER ANNABI'S CANON OF CONSTRUCTION FOR
    PLEA AGREEMENTS SHOULD BE OVERRULED OR
    LIMITED ......................................................................... 7

CONCLUSION ......................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Egbert v. Boule*,
  142 S.Ct. 1793 (2022) ..........................................................................................13

*Giglio v. United States*,
  405 U.S. 150 (1972) .............................................................................................10

*In re Altro*,
  180 F.3d 372 (2d Cir. 1999).................................................................................12

*In re Arnett*,
  804 F.2d 1200 (11th Cir. 1986)............................................................................14

*Little v. U.S.*,
  Nos. 1:08-cr-59, 1:09-cv-822, 2010 WL 3942749 (S.D. Ohio Oct. 7, 2010) ......12

*Margalli-Olvera v. I.N.S.*,
  43 F.3d 345 (8th Cir. 1994)..................................................................................11

*Rowe v. Griffin*,
  676 F.2d 524 (11th Cir. 1982)..............................................................................14

*Santobello v. New York*,
  404 U.S. 257 (1971) ..........................................................................................2, 10

*Thomas v. I.N.S.*,
  35 F.3d 1332 (9th Cir. 1994).................................................................................11

*U.S. v. Abbamonte*,
  759 F.2d 1065 (2d Cir. 1985)..................................................................................9

*U.S. v. Alessi*,
  544 F.2d 1139 (2d Cir. 1976)..............................................................................9, 15

*U.S. v. Ashraf*,
  320 F. App'x 26 (2d Cir. Apr. 6, 2009).................................................................13

*U.S. v. Brown*,
  Nos. 99-1230(L), 99-1762, 2002 WL 34244994 (2d Cir. Apr. 26, 2002) ...........13

*U.S. v. Carmichael*,
  216 F.3d 224 (2d Cir. 2000).................................................................................12

*U.S. v. Carter*,
454 F.2d 426 (4th Cir. 1972)..................................................................12

*U.S. v. Gebbie*,
294 F.3d 540 (3d Cir. 2002)................................................9, 10, 11, 14

*U.S. v. Gonzales*,
93 F. App'x 268 (2d Cir. Mar. 24, 2004) .............................................13

*U.S. v. Harvey*,
791 F.2d 294 (4th Cir. 1986)........................................................ 12, 14

*U.S. v. Jefferies*,
908 F.2d 1520 (11th Cir. 1990)..............................................................14

*U.S. v. Levasseur*,
846 F.2d 786 (1st Cir. 1988) ................................................................11

*U.S. v. Maxwell*,
118 F.4th 256 (2d. Cir. 2024)..........................................................6, 7

*U.S. v. Nersesian*,
824 F.2d 1294 (2d Cir. 1987)................................................................13

*U.S. v. Papa*,
533 F.2d 815 (2d Cir. 1976)............................................................9, 15

*U.S. v. Persico*,
774 F.2d 30 (2d Cir. 1985), *aff'g* 620 F. Supp. 836 (S.D.N.Y. 1985) .................13

*U.S. v. Prisco*,
391 F. App'x 920 (2d Cir. Sept. 2, 2010) .............................................13

*U.S. v. Reiter*,
848 F.2d 336 (2d Cir. 1988)................................................................13

*U.S. v. Rivera*,
844 F.2d 916 (2d Cir. 1988)................................................................13

*U.S. v. Robinson* ,
924 F.2d 612 (6th Cir. 1991)................................................................11

*U.S. v. Rourke* ,
74 F.3d 802 (7th Cir. 1996)..................................................................11

*U.S. v. Russo*,
801 F.2d 624 (2d Cir. 1986)................................................................13

iii

*U.S. v. Salameh*,
    152 F.3d 88 (2d Cir. 1998) .................................................................13

*U.S. v. Van Thournout*,
    100 F.3d 590 (8th Cir. 1996) ........................................................11, 14

*United States v. Annabi*,
    771 F.2d 670 (2d Cir. 1985) ..................................................... *passim*

*United States v. Difeaux*,
    163 F.3d 725 (2d Cir. 1998) ...............................................................1

*United States v. Johnson*,
    93 F.4th 605 *(*2024*)* .........................................................................1

*United States v. Padilla*,
    186 F.3d 136 (2d Cir. 1999) ...............................................................1

*United States v. Ready*,
    82 F.3d 551 (2d Cir. 1996) ...........................................................1, 12

*United States v. Wilkerson*,
    361 F.3d 717 (2d Cir. 2004) ...............................................................1

*Young v. U.S.*,
    953 F. Supp. 2d 1049 (D.S.D. 2013) ...............................................12

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ......................................................................14

## Statutes & Other Authorities:

18 U.S.C. § 2255 ..................................................................................3

Restatement (Second) of Agency § 272 .............................................10

## INTRODUCTION AND RULE 35(B)(1) STATEMENT

En Banc may be ordered when, as here, the panel decision was based on a decision of this Court that it was not permitted to overrule.[1] That decision, *United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985) (*per curiam*), created a canon of construction for interpreting plea agreements that conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue and stands in tension with what the Supreme Court and this Circuit have written about plea and immunity agreements.

*Annabi* holds that "a plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." *Annabi* at 672. This default rule necessarily conflicts with the long-standing rule in this circuit (and others) that plea agreements are to be construed "strictly against the Government." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (quoting *United States v. Ready*, 82 F.3d 551, 558-59 (2d Cir. 1996). *United States v. Johnson,* 93 F.4th 605, 616-617 (2024).  See also *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998) ("The reviewing court must … construe ambiguous

---

[1] A panel is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).

provisions against the government, which drafted the agreement and enjoys unequal bargaining power in the sentencing process.").

The Court should overrule *Annabi* because it is an outlier and incompatible with "fairness in securing agreement between an accused and a prosecutor." *See Santobello v. New York*, 404 U.S. 257, 261 (1971). Alternatively, the Court should limit *Annabi* as follows: *Annabi* should not apply (1) to plea agreements from other circuits that do not have such a rule; (2) to offenses based on the same conduct that was the subject of a non-prosecution or plea agreement; (3) where there are "affirmative indications" that the defendant reasonably understood the agreement to bind other districts; and (4) without discovery and an evidentiary hearing. Here, *Annabi* was applied to a plea that was negotiated and executed in the Eleventh Circuit (a circuit that does not follow *Annabi*); to an offense based on the same conduct that the "United States" had agreed not to prosecute; despite affirmative appearances of intent to bind other districts; and without discovery and a hearing.

ISSUE PRESENTED

Whether the canon of construction adopted by the Second Circuit in *Annabi,* whereby perceived ambiguities in the scope of immunity in a plea agreement are resolved in favor of the government, should be overruled or limited.

BACKGROUND

In September 2007, following state and federal investigations of alleged unlawful sexual activity, Jeffrey Epstein entered into a non-prosecution and plea agreement ("NPA") with the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL"). A173-179.[2] In return for pleading guilty to state charges, receiving an eighteen-month sentence and consenting to jurisdiction and liability for civil suits under 18 U.S.C. Section 2255, irrespective of where those claims arose, the government agreed, *inter alia*, not to prosecute Epstein in the SDFL for the offenses from 2001-2007 then under investigation. In addition, "the United States also agree[d] that it will not institute any criminal charges against any potential co-conspirators of Epstein, including but not limited to [four named individuals]." A178. The co-conspirator clause was negotiated at the same time that the terms of Epstein's liability for civil claims without geographic

---

[2] Numerical references preceded by "A" and "SA" are to the appendices filed with Appellant's Brief and the Government's Brief, respectively.

limitation were negotiated. SA78. Relying on the NPA, Epstein pled guilty in state court on June 30, 2008, and fulfilled all his promises. SA137.

In July of 2019, Epstein was indicted in the SDNY on charges of sex trafficking and conspiracy related to conduct in Florida and New York between 2003 and 2005. He died by suicide on August 10, 2019. One year later, Maxwell was indicted. Initially, Maxwell was charged with crimes in the 1994 to 1997 timeframe, in an apparent effort to circumvent the time frame covered by the NPA. However, on March 29, 2021, the SDNY added in its superseding indictment, a sex trafficking offense (Count Six) related to conduct and offenses wholly within the timeframe and subject matter covered by the NPA and contained in the proposed indictment in SDFL that was resolved by the NPA. A114. Doc 293 at p10 as referenced in A45.

Maxwell moved to dismiss the indictment based on the clear language of the NPA. Alternatively, in the event that the court determined that the language of the NPA was ambiguous, Maxwell, who was not a party to the agreement, sought discovery and a hearing to establish affirmative evidence of intent to bind other districts consistent with the plain language in the co-conspirator clause. Her motion was denied without a hearing or discovery. [3] A145. The District Court found that

---

[3] While the District Court did not order discovery, it did order the government to disclose to Maxwell "any evidence supporting a defense under the NPA." A145. The government responded

4

while Maxwell was a beneficiary of the NPA and had standing to enforce its terms, the NPA did not grant immunity to Maxwell in the SDNY. The District Court based its decision on *Annabi*. The case proceeded to trial and the jury found Maxwell guilty on, *inter alia*, Count Six.

In 2019 the Department of Justice Office of Professional Responsibility investigated whether and to what extent prosecutors in the SDFL improperly resolved the federal investigation of Epstein in 2007-2008 by the very NPA at issue here. Their investigation overlapped the prosecutions of Epstein and Maxwell in the SDNY and did not involve interviewing any defense counsel. The OPR did not contain a finding as to whether the co-conspirator clause of the NPA bound other districts, although it stated that "witnesses" stated that the clause provided transactional immunity and "found no policy prohibiting a U.S. Attorney from declining to prosecute third parties or providing transactional immunity." SA165.

PANEL DECISION

On appeal, Maxwell argued, *inter alia*, that the NPA barred her prosecution in the SDNY by its express language. That language read

> In consideration of Epstein's agreement to plead guilty and to provide compensation in the manner described above, if Epstein successfully fulfills all the terms and conditions of this agreement, the *United States* also agrees that it will not institute any criminal charges against any

---

that its review "did not include search terms relevant to the NPA, and the Government has not searched [the SDFL prosecutor's] inbox for communications relating to the NPA."

potential co-conspirators of Epstein, including but not limited to [four named individuals].

A178.

A unanimous panel of this Court applied the holding in *Annabi*, 771 F.2d. at 672, to the co-conspirator clause in the NPA to permit the prosecution of Maxwell, a beneficiary of that agreement, in the SDNY, notwithstanding that clause contained no limiting language. *U.S. v. Maxwell,* 118 F.4th 256 (2d. Cir. 2024). The Court, quoting *Annabi* held, that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." *Id* at 263. The Court applied *Annabi* even though the NPA had been negotiated in the Eleventh Circuit where no such contrarian rule of construction exists and did so without benefit to Maxwell of discovery or an evidentiary hearing. The Court found that neither the plea agreement nor the "negotiation history" showed that the co-conspirator clause was "meant to" bind other districts. Yet the clause contained no limiting language and "several witnesses told OPR that they believed the government's agreement not to prosecute unidentified "potential co-conspirators" amounted to "transactional immunity" (SA165). Notably, Maxwell was denied both discovery and a hearing and was therefore left to rely on the NPA and the OPR which was based on documents that were not shared with Maxwell and an investigation that did not include

interviewing Epstein's lawyers. Notably, the prosecutors could not recall why the clause had been added, much less who it was meant to immunize. SA104-106.

The Court also relied on the United States Attorneys' Manual's directive that districts not bind other districts without the express written approval of the United States Attorneys in the affected districts and the Judiciary Act of 1789 to suggest that US Attorneys are "cabined to their specific district unless otherwise directed." 118 F.4th at 265. Notably, the Manual also contains an admonition that USAOs who do not wish to bind USAOs in other districts explicitly limit the scope of an NPA to their districts. Justice Manual 9-27-630. This admonition implicitly acknowledges that AUSAs can bind other districts and that it is the obligation of the government to make explicit any limitation in the scope of immunity.

ARGUMENT

**EN BANC REVIEW IS NECESSARY TO DETERMINE WHETHER ANNABI'S CANON OF CONSTRUCTION FOR PLEA AGREEMENTS SHOULD BE OVERRULED OR LIMITED**

The Panel based its decision on *Annabi. Annabi* should be overruled because its canon of construction for interpreting plea agreements conflicts with the authoritative decisions of other circuits that have addressed the issue and stands in tension with what the Supreme Court and this Circuit have written about plea and immunity agreements.

In *Annabi,* the defendants were charged under a three-count indictment in the EDNY with conspiring to import, importing, and possessing heroin with intent to distribute. *See* 771 F.2d at 671. After they pled guilty to the substantive importation charge (Count Two), the prosecutor represented to the court that "the only agreement that exists between defendants and the Government is that at the time of the imposition of sentence on Count Two, the Government would move to dismiss the two open remaining counts…" *Id*. Accordingly, the conspiracy and possession counts were dismissed. *See id.* Subsequently, the defendants were indicted in the SDNY with conspiracy to distribute heroin. *See id.* Whereas the dismissed EDNY charges had only alleged a conspiracy on or about a date in 1982, the new SDNY charges alleged criminal conduct extending from 1982 to 1985. The defendants argued that these new charges were barred by their plea agreement with the USAO-EDNY. *See id.* The District Court conducted an evidentiary hearing—obtaining testimony from both the prosecutor and the defense attorney from the EDNY proceedings—and concluded that the agreement was not meant to bind the USAO-SDNY. *See id.* The Second Circuit noted that this result was highly counterintuitive, acknowledging that "[a] plea agreement whereby a federal prosecutor agrees that 'the Government' will dismiss counts of an indictment…might be thought to bar the United States from reprosecuting the dismissed charges in any judicial district…." *Id.* at 672. Nevertheless, the Court declared, "the law has evolved to the contrary,"

adding, "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." *Id*. The Court concluded that, because the conspiracy alleged in the SDNY indictment "extended for an additional two years" beyond the date of the conspiracy alleged in the EDNY indictment, "the new charges are sufficiently distinct at least to warrant application of [this] rule concerning construction of plea agreements." *Id.*

*Annabi* has been sharply criticized. One circuit said it was "unable to discern a sound basis for the [*Annabi*] rule," adding that the decision "really has no analytically sound foundation." *U.S. v. Gebbie*, 294 F.3d 540, 547 (3d Cir. 2002). *Annabi* cited three prior cases from this Circuit in support of the rule. 771 F.2d at 672 (citing *U.S. v. Abbamonte*, 759 F.2d 1065 (2d Cir. 1985); *U.S. v. Alessi*, 544 F.2d 1139 (2d Cir. 1976); and *U.S. v. Papa*, 533 F.2d 815 (2d Cir. 1976)). But, as *Gebbie* explained, *Annabi* misread this Court's precedent and fashioned an "illogical" rule out of whole cloth:

> The first case cited in *Annabi* is *Abbamonte*, but *Abbamonte* merely relies upon the other two cases cited in *Annabi*—*Alessi* and *Papa* …
>
> The court in *Alessi* relies upon *Papa*, which is a related case. …
>
> ***Papa*, however, provides no support for the rule the Second Circuit follows**. … Although *Papa* held that the plea agreement did not bind other districts *because the evidence revealed an intent to bind only one district*, the Second Circuit apparently has broadly interpreted this case as meaning that plea agreements do not bind other districts absent an

9

affirmative appearance of doing so. *Papa* does not explain or attempt to rationalize the rule that has evolved.

294 F.3d at 547-48 (*brackets and italics in original; bold added*).

*Annabi* stands in tension with what the United States Supreme Court has written about plea and immunity agreements. In *Santobello*, 404 U.S. 257 (1971)—the seminal case on plea bargaining—the Supreme Court held that one prosecutor's promise in a plea agreement would bind other prosecutors, even those who might have been unaware of the promise. As *Santobello* explained, "[t]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." 404 U.S. at 262. And in *Giglio v. United States*, the Supreme Court held that an AUSA had a duty under *Brady* to disclose a promise of immunity that another AUSA had made to a testifying witness, even though the first AUSA had been falsely assured that no such promise was made. *See* 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government") (citing Restatement (Second) of Agency § 272). These premises are inconsistent with the notion that a federal prosecutor in one district has no obligation to honor promises made by his or her counterpart in another.

Appellant is not aware of *any* published authority from another circuit that follows *Annabi* in holding that an ambiguous promise made in a plea agreement by

one USAO is presumed not to bind other USAOs.[4]  To the contrary, the weight of authority holds that a representation by the United States Attorney or her agents will bind USAOs in other districts, if not the federal Government as a whole.  *See Gebbie*, 294 F.3d at 550 ("[W]hen a United States Attorney negotiates and contracts on behalf of 'the United States' or 'the Government' in a plea agreement … that attorney speaks for and binds all of his or her fellow United States Attorneys with respect to those same crimes and those same defendants.  … United States Attorneys should not be viewed as sovereigns of autonomous fiefdoms."); *U.S. v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) ("Absent an express limitation, any promises made by an [AUSA] in one district will bind an [AUSA] in another district"); *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 353 (8th Cir. 1994) ("promises made by an [AUSA]" in a plea agreement "bind all agents of the United States government"); *Thomas v. I.N.S.*, 35 F.3d 1332 (9th Cir. 1994) (enforcing against the INS a cooperation agreement between defendant and an AUSA promising that "the government" would not oppose defendant's application for relief from deportation); *U.S. v. Levasseur*, 846 F.2d 786, 799 (1st Cir. 1988) (expressly declining to apply *Annabi* in the estoppel context, instead holding that "the representation of any [AUSA] may, in

---

[4] The Seventh Circuit held in *U.S. v. Rourke* that a plea agreement did not bind the Federal Aviation Administration. *See* 74 F.3d 802, 807 n.5 (7th Cir. 1996).  But *Rourke* did not go as far as *Annabi* in ruling that a promise by one USAO is presumptively nonbinding on *other USAOs*.  The Sixth Circuit in *U.S. v. Robinson* held, on the facts before it, that a plea agreement in the Eastern District of North Carolina was not binding in the Eastern District of Michigan, but explicitly declined to take a position on *Annabi*'s broader rule.  *See* 924 F.2d 612, 613 (6th Cir. 1991).

appropriate circumstances, be invoked to estop the United States…"); *U.S. v. Harvey*, 791 F.2d 294, 303 (4th Cir. 1986) ("Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that 'agrees' to whatever is agreed to."); *U.S. v. Carter*, 454 F.2d 426 (4th Cir. 1972) (en banc) (vacating conviction where a plea "bargain was allegedly breached in a neighboring district," adding that "[t]he United States government is the United States government throughout all of the states and districts"); *Young v. U.S.*, 953 F.Supp.2d 1049, 1069 n.4 (D.S.D. 2013) (plea agreement between defendant and "the United States" in West Virginia would bind federal prosecutors in South Dakota); *Little v. U.S.*, Nos. 1:08-cr-59, 1:09-cv-822, 2010 WL 3942749, at *3 (S.D. Ohio Oct. 7, 2010) (plea agreement between defendant "and the United States of America," which was "silent as to the effect it may have with respect to other United States Attorneys," would be interpreted to "bind[] the United States Attorneys in all other districts").

Annabi is also out of step with the law of *this* Circuit. It is well-settled that "we determine whether a plea agreement has been breached by looking to the reasonable understanding of the parties and by resolving any ambiguities against the Government." *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999); *see also U.S. v. Carmichael*, 216 F.3d 224 (2d Cir. 2000) ("[W]e 'construe plea agreements strictly against the Government.'") (quoting *U.S. v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996)). But *Annabi* flips this formulation on its head, holding that an ambiguous promise of

immunity by "the United States" is to be construed *against the defendant*—binding just one USAO rather than the Government as a whole, "unless it affirmatively appears that the agreement contemplates a broader restriction."  771 F.2d at 672. *Annabi* did not explain or acknowledge its departure from this longstanding doctrine.

This Court has been exceedingly reluctant, until now, to affirm a conviction on the force of *Annabi*'s reasoning.  Previous decisions from this Court that cited *Annabi* have done so essentially in dictum (as in cases involving unambiguous plea agreements, which do not require resort to *Annabi*'s canon of construction),[5] or for points unrelated to whether an agreement with one USAO will bind another,[6] or—in one case—in an unpublished decision that provided too little information to clarify whether the plea agreement as a whole was ambiguous.[7]

*Annabi*'s analytical faults support limiting application of the rule.  *Cf. Egbert v. Boule*, 142 S.Ct. 1793, 1803 (2022) (where underlying precedent may have been

---

[5] *See U.S. v. Prisco*, 391 F. App'x 920, 921 (2d Cir. Sept. 2, 2010) (agreement stated it was "limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities"); *U.S. v. Ashraf*, 320 F. App'x 26, 28 (2d Cir. Apr. 6, 2009) (agreement, "by its express terms, bound only the U.S. Attorney's Office for the Eastern District of Virginia"); *U.S. v. Gonzales*, 93 F. App'x 268, 271 (2d Cir. Mar. 24, 2004) (agreement "explicitly states that the agreement binds only the United States Attorney's Office for the District of New Mexico"); *U.S. v. Salameh*, 152 F.3d 88, 119, 120 (2d Cir. 1998) ("[T]his agreement is limited to the United States Attorney's Office for the Eastern District of New York and cannot bind other federal, state or local prosecuting authorities."); *U.S. v. Russo*, 801 F.2d 624, 626 (2d Cir. 1986) ("[W]e need not resolve the question whether the Southern District is bound by this particular plea agreement…."); *U.S. v. Persico*, 774 F.2d 30 (2d Cir. 1985), *aff'g* 620 F.Supp. 836, 846 (S.D.N.Y. 1985) ("Persico's plea agreement explicitly states that it 'is binding on the United States only in [the Eastern] district'") (brackets in original).

[6] *See U.S. v. Reiter*, 848 F.2d 336, 340 (2d Cir. 1988) (discussing double jeopardy issue); *U.S. v. Rivera*, 844 F.2d 916, 923 (2d Cir. 1988) (plea agreement and later charges arose in the same district, unlike *Annabi*); *U.S. v. Nersesian*, 824 F.2d 1294, 1321-22 (2d Cir. 1987) (case related to *Annabi* itself).

[7] *See U.S. v. Brown*, Nos. 99-1230(L), 99-1762, 2002 WL 34244994, at *2 (2d Cir. Apr. 26, 2002).

doctrinally flawed, expanding it into "new…context[s]" would be "a disfavored judicial activity") (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857, 1859 (2017)). At minimum, *Annabi's* questionable doctrine should limited in four respects:

**First**, Annabi should not apply to pleas that originate outside the Second Circuit. Unlike the plea agreement in *Annabi*, the NPA originated in the Eleventh Circuit. Under textbook choice-of-law rules and principles of fairness, it would be unreasonable to graft a unique, pro-prosecution canon of construction, derived from the law of a foreign circuit—this circuit—onto a plea agreement negotiated with prosecutors in a circuit where the very opposite rule applies, i.e. that ambiguities in plea agreements are to be resolved against the government. Under Eleventh Circuit precedent, even if the reference to "the United States" were deemed ambiguous, the ambiguity "must be read against the government.'" *U.S. v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) (citing *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir. 1986)); *see also Rowe v. Griffin*, 676 F.2d 524, 526 n.4 (11th Cir. 1982). And this result would bring the Eleventh Circuit in line with every circuit that has directly confronted this question (other than the Second Circuit). *See Gebbie*, 294 F.3d at 550; *Van Thournout*, 100 F.3d at 594; *Harvey*, 791 F.2d at 303.

**Second**, *Annabi* should only apply when "the new charges are sufficiently distinct" from the old ones. 771 F.2d at 672. And *Annabi* made clear that charges are "sufficiently distinct" when they cover a different or expanded period of time.

*Id.* Here, the USAO-SDNY charged Appellant under Count Six with conduct from 2001 through 2004 that falls entirely within the 2001-2007 offense period contemplated by the NPA.

**Third,** *Annabi* should apply only if there are no "affirmative" indications whatsoever that the plea agreement was intended to bind other USAOs. *See Annabi*, 771 F.2d at 671; *Alessi*, 544 F.2d at 1154; *Papa*, 533 F.2d at 823-25. That is not the case here. Appellant produced ample evidence that the NPA was intended to bind other USAOs. *See* Appellant's Principal Brief at 33-38. The investigation itself suggests it was meant to bind the SDNY, in particular, because the investigation was active in the SDNY at the time the NPA was negotiated. SA72, 84, 86, 127. *See* Doc 293 at 16. Defense counsel understood the plea agreement to provide "genuine finality." SA118. This reasonable understanding, supported by the NPA itself and the limited negotiation history contained in the one-sided OPR was sufficient to preclude application of *Annabi*.

**Fourth**, at most, *Annabi* should apply, if at all, only after the court permits discovery and conducts an evidentiary hearing. *See Annabi*, 771 F.2d at 671; *Papa*, 533 F.2d at 823. Here, appellant was denied discovery and an evidentiary hearing.

CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Petition be granted and that this Court vacate the Panel decision, overrule *Annabi* and dismiss the indictment or remand for an evidentiary hearing.

Dated:      New York, New York
              November 1, 2024

Respectfully Submitted,

By: /s/Diana Fabi Samson

**ARTHUR L. AIDALA**
**DIANA FABI SAMSON**
**AIDALA, BERTUNA &**
**KAMINS PC**
***Attorneys for Defendant-***
***Appellant Ghislaine Maxwell***
546 Fifth Avenue, Sixth Floor
New York, New York 10036
212 486-0011

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 40(b)(1), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 3,889 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

Dated: New York, New York
      November 1, 2024

# ORDER

22-1426-cr
*United States v. Maxwell*

# In the
# United States Court of Appeals
## for the Second Circuit

———————

AUGUST TERM 2023

No. 22-1426-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

GHISLAINE MAXWELL, also known as Sealed Defendant 1,
*Defendant-Appellant*.

———————

On Appeal from the United States District Court for the Southern
District of New York

———————

ARGUED: MARCH 12, 2024
DECIDED: SEPTEMBER 17, 2024

———————

Before: CABRANES, WESLEY, and LOHIER, *Circuit Judges*.

———————

Defendant Ghislaine Maxwell appeals her June 29, 2022, judgment of conviction in the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*). Maxwell was convicted of conspiracy to transport minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 371; transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); and sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(2). She was principally sentenced to concurrent terms of imprisonment of 60 months, 120 months, and 240 months, respectively, to be followed by concurrent terms of supervised release.

On appeal, the questions presented are whether (1) Jeffrey Epstein's Non-Prosecution Agreement with the United States Attorney's Office for the Southern District of Florida barred Maxwell's prosecution by the United States Attorney's Office for the Southern District of New York; (2) a second superseding indictment of March 29, 2021, complied with the statute of limitations; (3) the District Court abused its discretion in denying Maxwell's Rule 33 motion for a new trial based on the claimed violation of her Sixth Amendment right to a fair and impartial jury; (4) the District Court's response to a jury note resulted in a constructive amendment of, or prejudicial variance from, the allegations in the second superseding indictment; and (5) Maxwell's sentence was procedurally reasonable.

Identifying no errors in the District Court's conduct of this complex case, we AFFIRM the District Court's June 29, 2022, judgment of conviction.

———————

ANDREW ROHRBACH, Assistant United States
Attorney (Maurene Comey, Alison Moe,
Lara Pomerantz, Won S. Shin, Assistant
United States Attorneys, *on the brief*), *for*
Damian Williams, United States Attorney
for the Southern District of New York, New
York, NY, *for Appellee*.

DIANA FABI SAMSON (Arthur L. Aidala, John
M. Leventhal, *on the brief*), Aidala Bertuna &
Kamins PC, New York, NY, *for Defendant-
Appellant*.

———————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant Ghislaine Maxwell appeals her June 29, 2022,
judgment of conviction in the United States District Court for the
Southern District of New York (Alison J. Nathan, *Judge*). Maxwell was
convicted of conspiracy to transport minors with intent to engage in
criminal sexual activity in violation of 18 U.S.C. § 371; transportation
of a minor with intent to engage in criminal sexual activity in violation
of 18 U.S.C. § 2423(a); and sex trafficking of a minor in violation of 18
U.S.C. § 1591(a) and (b)(2). The District Court imposed concurrent
terms of imprisonment of 60 months, 120 months, and 240 months,
respectively, to be followed by concurrent terms of supervised release

of three years, three years, and five years, respectively. The District Court also imposed a fine of $250,000 on each count for a total of $750,000.

On appeal, the questions presented are (1) whether Jeffrey Epstein's Non-Prosecution Agreement ("NPA") with the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL") barred Maxwell's prosecution by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"); (2) whether Maxwell's second superseding indictment of March 29, 2021 (the "Indictment") complied with the statute of limitations; (3) whether the District Court abused its discretion in denying Maxwell's Rule 33 motion for a new trial based on the claimed violation of her Sixth Amendment right to a fair and impartial jury; (4) whether the District Court's response to a jury note resulted in a constructive amendment of, or prejudicial variance from, the allegations in the Indictment; and (5) whether Maxwell's sentence was procedurally reasonable.

We hold that Epstein's NPA did not bar Maxwell's prosecution by USAO-SDNY as the NPA does not bind USAO-SDNY. We hold that Maxwell's Indictment complied with the statute of limitations as 18 U.S.C. § 3283 extended the time to bring charges of sexual abuse for offenses committed before the date of the statute's enactment. We further hold that the District Court did not abuse its discretion in denying Maxwell's Rule 33 motion for a new trial based on one juror's erroneous answers during *voir dire.* We also hold that the District Court's response to a jury note did not result in a constructive amendment of, or prejudicial variance from, the allegations in the

Indictment. Lastly, we hold that Maxwell's sentence is procedurally reasonable.

Accordingly, we **AFFIRM** the District Court's June 29, 2022, judgment of conviction.

## I. BACKGROUND [1]

Defendant Ghislaine Maxwell coordinated, facilitated, and contributed to Jeffrey Epstein's sexual abuse of women and underage girls. Starting in 1994, Maxwell groomed numerous young women to engage in sexual activity with Epstein by building friendships with these young women, gradually normalizing discussions of sexual topics and sexual abuse. Until about 2004, this pattern of sexual abuse continued as Maxwell provided Epstein access to underage girls in various locations in the United States.

1. Epstein's Non-Prosecution Agreement

In September 2007, following state and federal investigations into allegations of Epstein's unlawful sexual activity, Epstein entered into an NPA with USAO-SDFL. In the NPA, Epstein agreed to plead guilty to one count of solicitation of prostitution, in violation of Florida

---

[1] Unless otherwise noted, the following facts are drawn from the evidence presented at trial and described in the light most favorable to the Government. *See United States v. Litwok*, 678 F.3d 208, 210-11 (2d Cir. 2012) ("Because this is an appeal from a judgment of conviction entered after a jury trial, the [ ] facts are drawn from the trial evidence and described in the light most favorable to the Government.").

Statutes § 796.07,[2] and to one count of solicitation of minors to engage in prostitution, in violation of Florida Statutes § 796.03.[3] He agreed to receive a sentence of eighteen months' imprisonment on the two charges. In consideration of Epstein's agreement, the NPA states that "the United States also agrees that it will not institute any criminal charges against any potential co-conspirators of Epstein, including but not limited to Sarah Kellen, Adriana Ross, Lesley Groff, or Nadia Marcinkova."[4]

### 2. Maxwell's Indictment and Trial-Related Proceedings

The Indictment filed against Maxwell contained eight counts, six of which proceeded to trial.[5] Prior to the commencement of trial,

---

[2] Florida Statutes § 796.07 provides in relevant part:

> (2) It is unlawful:

> > (f) To solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation.

[3] Florida Statutes § 796.03, which has since been repealed, provided in relevant part: "A person who procures for prostitution, or causes to be prostituted, any person who is under the age of 18 years commits a felony of the second degree."

[4] A-178.

[5] Count One charged Maxwell with conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371. Count Two charged Maxwell with enticement of a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2. Count Three charged Maxwell with conspiracy to transport minors with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 371. Count Four charged Maxwell with transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §§ 2423(a) and 2. Count Five charged Maxwell with sex trafficking conspiracy, in

prospective jurors completed a lengthy questionnaire, with several questions raising issues relevant to the trial. Based on the completed questionnaires, the parties selected prospective jurors to proceed to in-person *voir dire*. The District Court ultimately empaneled a jury.

During the four-and-a-half-week jury trial, the Government presented evidence of the repeated sexual abuse of six girls. At the conclusion of trial, on December 29, 2021, the jury found Maxwell guilty on all but one count.[6]

Following the verdict, Juror 50 gave press interviews during which he stated that he was a survivor of child sexual abuse.[7] In his answers to the written jury questionnaire, however, Juror 50 answered "no" to three questions asking whether he or a friend or family member had ever been the victim of a crime; whether he or a friend or family member had ever been the victim of sexual harassment, sexual abuse, or sexual assault; and whether he or a friend or family member had ever been accused of sexual harassment, sexual abuse, or sexual

---

violation of 18 U.S.C. § 371. Count Six charged Maxwell with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and 2. Counts Seven and Eight charged Maxwell with perjury, in violation of 18 U.S.C. § 1623. The perjury charges were severed from the remaining charges and ultimately dismissed at sentencing.

[6] The jury found Maxwell guilty on Counts One, Three, Four, Five, and Six. Maxwell was acquitted on Count Two.

[7] Consistent with a juror anonymity order entered for trial, the parties and the District Court referred to the jurors by pseudonym.

7

assault.[8] Upon learning of the interviews, the Government filed a letter on January 5, 2022, requesting a hearing; Maxwell then moved for a new trial under Federal Rule of Criminal Procedure 33. On March 8, 2022, the District Court held a hearing and Juror 50 testified—under grant of immunity—that his answers to three questions related to sexual abuse in the jury questionnaire were not accurate but that the answers were an inadvertent mistake and that his experiences did not affect his ability to be fair and impartial. Finding Juror 50's testimony to be credible, the District Court denied Maxwell's motion for a new trial in a written order.

Maxwell was subsequently sentenced to a term of 240 months' imprisonment to be followed by five years' supervised release, and the

---

[8] Question 2 asked "[h]ave you, or any of your relatives or close friends, ever been a victim of a crime?" Question 48 asked "[h]ave you or a friend or family member ever been the victim of sexual harassment, sexual abuse, or sexual assault? (This includes actual or attempted sexual assault or other unwanted sexual advance, including by a stranger, acquaintance, supervisor, teacher, or family member.)" Finally, Question 49 asked

> [h]ave you or a friend or family member ever been accused of sexual harassment, sexual abuse, or sexual assault? (This includes both formal accusations in a court of law or informal accusations in a social or work setting of actual or attempted sexual assault or other unwanted sexual advance, including by a stranger, acquaintance, supervisor, teacher, or family member.

*See* A-299, A-310.

District Court imposed a $750,000 fine and a $300 mandatory special assessment. This appeal followed.

## II. DISCUSSION

### 1. The NPA Between Epstein and USAO-SDFL Did Not Bar Maxwell's Prosecution by USAO-SDNY

Maxwell sought dismissal of the charges in the Indictment on the grounds that the NPA made between Epstein and USAO-SDFL immunized her from prosecution on all counts as a third-party beneficiary of the NPA. The District Court denied the motion, rejecting Maxwell's arguments. We agree. We review *de novo* the denial of a motion to dismiss an indictment.[9]

In arguing that the NPA barred her prosecution by USAO-SDNY, Maxwell cites the portion of the NPA in which "the United States [ ] agree[d] that it w[ould] not institute any criminal charges against any potential co-conspirators of Epstein."[10] We hold that the NPA with USAO-SDFL does not bind USAO-SDNY.

It is well established in our Circuit that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement

---

[9] *See, e.g., United States v. Walters*, 910 F.3d 11, 22 (2d Cir. 2018).

[10] A-178.

contemplates a broader restriction."[11] And while Maxwell contends that we cannot apply *Annabi* to an agreement negotiated and executed outside of this Circuit, we have previously done just that.[12] Applying *Annabi*, we conclude that the NPA did not bar Maxwell's prosecution by USAO-SDNY. There is nothing in the NPA that affirmatively shows that the NPA was intended to bind multiple districts. Instead, where the NPA is not silent, the agreement's scope is *expressly limited* to the Southern District of Florida. The NPA makes clear that if Epstein fulfilled his obligations, he would no longer face charges *in that district*:

> After timely fulfilling all the terms and conditions of the Agreement, no prosecution for the offenses set out on pages 1 and 2 of this Agreement, nor any other offenses that have been the subject of the joint investigation by the Federal Bureau of Investigation and the United States Attorney's Office, nor any

---

[11] *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir. 1985). We recognize that circuits have been split on this issue for decades. *See United States v. Harvey*, 791 F.2d 294, 303 (4th Cir. 1986); *United States v. Gebbie*, 294 F.3d 540, 550 (3d Cir. 2002).

[12] *See, e.g., United States v. Prisco*, 391 F. App'x 920, 921 (2d Cir. 2010) (summary order) (applying *Annabi* to plea agreement entered into in the District of New Jersey); *United States v. Gonzalez*, 93 F. App'x 268, 270 (2d Cir. 2004) (summary order) (same, to agreement entered into in the District of New Mexico). Nor does *Annabi*, as Maxwell contends, apply only where subsequent charges are "sufficiently distinct" from charges covered by an earlier agreement. In *Annabi*, this Court rejected an interpretation of a prior plea agreement that rested on the Double Jeopardy Clause, reasoning that even if the Double Jeopardy Clause applied, the subsequent charges were "sufficiently distinct" and therefore fell outside the Clause's protections. *Annabi*, 771 F.2d at 672. This Court did not, however, conclude that the rule of construction it announced depended on the similarities between earlier and subsequent charges.

offenses that arose from the Federal Grand Jury investigation will be instituted *in this District*, and the charges against Epstein if any, will be dismissed.[13]

The only language in the NPA that speaks to the agreement's scope is limiting language.

The negotiation history of the NPA, just as the text, fails to show that the agreement was intended to bind other districts. Under our Court's precedent, the negotiation history of an NPA can support an inference that an NPA "affirmatively" binds other districts.[14] Yet, the actions of USAO-SDFL do not indicate that the NPA was intended to bind other districts.

The United States Attorney's Manual that was operable during the negotiations of the NPA required that:

No district or division shall make any agreement, including any agreement not to prosecute, which purports to bind any other district(s) or division without the express written approval of

---

[13] A-175 (emphasis added). The agreement's scope is also limited in an additional section:

THEREFORE, on the authority of R. Alexander Acosta, United States Attorney for the Southern District of Florida, *prosecution in this District* for these offenses shall be deferred in favor of prosecution by the State of Florida, provided that Epstein abides by the following conditions and the requirements of this Agreement set forth below.

*Id.* (emphasis added).

[14] *See United States v. Russo*, 801 F.2d 624, 626 (2d Cir. 1986).

the United States Attorney(s) in each affected district and/or the
Assistant Attorney General of the Criminal Division.[15]

Nothing before us indicates that USAO-SDNY had been notified or
had approved of Epstein's NPA with USAO-SDFL and intended to be
bound by it. And the Assistant Attorney General for the Criminal
Division stated in an interview with the Office of Professional
Responsibility that she "played no role" in the NPA, either by
reviewing or approving the agreement.

The history of the Office of the United States Attorney is instructive
as to the scope of their actions and duties. The Judiciary Act of 1789
created the Office of the United States Attorney, along with the office
of the Attorney General. More specifically, the Judiciary Act provided
for the appointment, in each district, of a "person learned in the law to
act as attorney for the United States *in such district*, who shall be sworn
or affirmed to the faithful execution of his office, whose duty it shall
be to prosecute *in such district* all delinquents for crimes and offences,
cognizable under the authority of the United States, and all civil
actions in which the United States shall be concerned."[16] The Judiciary
Act thus emphasized that U.S. Attorneys would enforce the law of the
United States but did not determine that the actions of one U.S.
Attorney could bind other districts, let alone the entire nation. In fact,
the phrase "in such district," repeated twice, implies that the scope of

---

[15] United States Attorney's Manual § 9-27.641 (2007).

[16] An Act to Establish the Judicial Courts of the United States, ch. 20, § 35, 1 Stat. 73, 92-93
(1789) (emphasis added).

the actions and the duties of the U.S. Attorneys would be limited to their own districts, absent any express exceptions.

Since 1789, while the number of federal districts has grown significantly, the duties of a U.S. Attorney and their scope remain largely unchanged. By statute, U.S. Attorneys, "within [their] district, shall (1) prosecute for all offenses against the United States; (2) prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned."[17] Again, the scope of the duties of a U.S. Attorney is cabined to their specific district unless otherwise directed.[18]

In short, *Annabi* controls the result here. Nothing in the text of the NPA or its negotiation history suggests that the NPA precluded USAO-SDNY from prosecuting Maxwell for the charges in the

---

[17] 28 U.S.C. § 547.

[18] This does not suggest that there are no instances in which a U.S. Attorney's powers do not extend beyond their districts. For instance, under 28 U.S.C. § 515 a U.S. Attorney can represent the Government or participate in proceedings in other districts, but only when specifically directed by the Attorney General:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Indictment. The District Court therefore correctly denied Maxwell's motion without an evidentiary hearing.

## 2. The Indictment Is Timely

Maxwell argues that Counts Three and Four of the Indictment are untimely because they do not fall within the scope of offenses involving the sexual or physical abuse or kidnapping of a minor and thereby do not fall within the extended statute of limitations provided by § 3283.[19] Separately, Maxwell contends that the Government cannot apply the 2003 amendment to § 3283 that extended the statute of limitations to those offenses that were committed before the enactment into law of the provision. On both points, we disagree and hold that the District Court correctly denied Maxwell's motions to dismiss the charges as untimely. We review *de novo* the denial of a motion to dismiss an indictment and the application of a statute of limitations.[20]

*First*, Counts Three and Four of the Indictment are offenses involving the sexual abuse of minors. The District Court properly applied *Weingarten v. United States*.[21] In *Weingarten*, we explained that Congress intended courts to apply § 3283 using a case-specific

---

[19] 18 U.S.C. § 3283 provides: "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."

[20] *United States v. Sampson*, 898 F.3d 270, 276, 278 (2d Cir. 2018).

[21] 865 F.3d 48, 58-60 (2d Cir. 2017); *see also United States v. Maxwell*, 534 F. Supp. 3d 299, 313-14 (S.D.N.Y. 2021).

approach as opposed to a "categorical approach."[22] We see no reason to depart from our reasoning in *Weingarten*. Accordingly, the question presented here is whether the charged offenses involved the sexual abuse of a minor for the purposes of § 3283 based on the facts of the case. Jane, one of the women who testified at trial, gave evidence that she had been sexually abused when transported across state lines as a minor. Counts Three and Four thus qualify as offenses, and § 3283 applies to those offenses.

*Second*, Maxwell argues that Counts Three, Four, and Six of the Indictment are barred by the statute of limitations because the extended statute of limitations provided by the 2003 amendment to § 3283 does not apply to pre-enactment conduct. In *Landgraf v. USI Film Products*, the Supreme Court held that a court, in deciding whether a statute applies retroactively, must first "determine whether Congress has expressly prescribed the statute's proper reach."[23] If Congress has done so, "the inquiry ends, and the court enforces the

---

[22] The "categorical approach" is a method of statutory interpretation that requires courts to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" for sentencing and immigration purposes. *Taylor v. United States*, 495 U.S. 575, 600 (1990). We properly reasoned in *Weingarten* that § 3283 met none of the conditions listed by *Taylor* that might require application of the categorical approach. *See Weingarten*, 865 F.3d at 58-60. First, "[t]he language of § 3283[] . . . reaches beyond the offense and its legal elements to the conduct 'involv[ed]' in the offense." *Id.* at 59-60. Second, legislative history suggests that Congress intended § 3283 to be applied broadly. *Id.* at 60. Third, a case-specific approach would not produce practical difficulties or potential unfairness. *Id.*

[23] 511 U.S. 244, 280 (1994); *see also Weingarten*, 865 F.3d at 54-55.

statute as it is written."[24] If the statute "is ambiguous or contains no express command regarding retroactivity, a reviewing court must determine whether applying the statute to antecedent conduct would create presumptively impermissible retroactive effects."[25]

Here, the inquiry is straightforward. In 2003, Congress amended § 3283 to provide: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child."[26] The text of § 3283—that *no* statute of limitations that would *otherwise* preclude prosecution of these offenses will apply—plainly requires that it prevent the application of any statute of limitations that would otherwise apply to past conduct.

The statutory text makes clear that Congress intended to extend the time to bring charges of sexual abuse for pre-enactment conduct as the prior statute of limitations was inadequate. This is enough to conclude that the PROTECT Act's amendment to § 3283 applies to Maxwell's conduct as charged in the Indictment.

---

[24] *In re Enter. Mortg. Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401, 406 (2d Cir. 2004) (citing *Landgraf*, 511 U.S. at 280).

[25] *Weingarten*, 865 F.3d at 55 (citation and internal quotation marks omitted).

[26] PROTECT Act, Pub. L. No. 108-21, § 202, 117 Stat. 650, 660 (2003).

### 3. The District Court Did Not Abuse Its Discretion in Denying Maxwell's Motion for a New Trial

Maxwell contends that she was deprived of her constitutional right to a fair and impartial jury because Juror 50 failed to accurately respond to several questions related to his history of sexual abuse as part of the jury questionnaire during jury selection. Following a special evidentiary hearing, the District Court denied Maxwell's motion for a new trial.

We review a District Court's denial of a motion for a new trial for abuse of discretion.[27] We have been extremely reluctant to "haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences."[28] While courts can "vacate any judgment and grant a new trial if the interest of justice so requires," Fed. R. Crim. P. 33(a), they should do so "sparingly" and only in "the most extraordinary circumstances."[29] A district court "has

---

[27] *See Rivas v. Brattesani*, 94 F.3d 802, 807 (2d Cir. 1996). "[W]e are mindful that a judge has not abused her discretion simply because she has made a different decision than we would have made in the first instance." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). We have repeatedly explained that the term of art "abuse of discretion" includes errors of law, a clearly erroneous assessment of the evidence, or "a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citation and internal quotation marks omitted).

[28] *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983).

[29] *Ferguson*, 246 F.3d at 134.

broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced" and is shown deference on appeal.[30]

A Rule 33 motion based on a juror's alleged erroneous response during *voir dire* is governed by *McDonough Power Equipment, Inc. v. Greenwood*.[31] Under *McDonough*, a party seeking a new trial "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."[32]

The District Court applied the *McDonough* standard, found Juror 50's testimony credible, and determined that Juror 50's erroneous responses during *voir dire* were "not deliberately incorrect" and that "he would *not* have been struck for cause if he had provided accurate responses to the questionnaire."[33] In fact, as the District Court noted, Maxwell did not challenge the inclusion of other jurors who disclosed past experience with sexual abuse, assault, or harassment. This is

---

[30] *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) (citation and internal quotation marks omitted).

[31] 464 U.S. 548 (1984).

[32] *Id.* at 556.

[33] A-340 (emphasis added). The Supreme Court reminds us that "[t]o invalidate the result of a [ ] trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555.

enough; the District Court did not abuse its discretion in denying Maxwell's motion for a new trial.[34]

### 4. The District Court's Response to a Jury Note Did Not Result in a Constructive Amendment of, or Prejudicial Variance from, the Allegations in the Indictment

During jury deliberations, the jury sent the following jury note regarding Count Four of the Indictment:

> Under Count Four (4), if the defendant aided in the transportation of Jane's return flight, but not the flight to New Mexico where/if the intent was for Jane to engage in sexual activity, can she be found guilty under the second element?[35]

The District Court determined that it would not respond to the note directly because it was difficult to "parse factually and legally" and instead referred the jury to the second element of Count Four.[36]

---

[34] Nor did the District Court err in questioning Juror 50 rather than allowing the parties to do so. In conducting a hearing on potential juror misconduct, "[w]e leave it to the district court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera." *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989). And while Maxwell contends that the District Court improperly limited questioning about Juror 50's role in deliberations, she both waived that argument below and fails to show here how any such questioning would not be foreclosed by Federal Rule of Evidence 606(b).

[35] A-238.

[36] A-207-221. The District Court's instruction on the second element of Count Four required the jury to find that "Maxwell knowingly transported Jane in interstate commerce with the

Maxwell subsequently filed a letter seeking reconsideration of the District Court's response, claiming that this response resulted in a constructive amendment or prejudicial variance. The District Court declined to reconsider its response and denied Maxwell's motion.

Maxwell appeals the District Court's denial and argues that the alleged constructive amendment is a *per se* violation of the Grand Jury Clause of the Fifth Amendment. Specifically, Maxwell argues that testimony about a witness's sexual abuse in New Mexico presented the jury with another basis for conviction, which is distinct from the charges in the Indictment. Similarly, Maxwell argues that this testimony resulted in a prejudicial variance from the Indictment. We disagree and affirm the District Court's denial.

We review the denial of a motion claiming constructive amendment or prejudicial variance *de novo*.[37] To satisfy the Fifth Amendment's Grand Jury Clause, "an indictment must contain the elements of the offense charged and fairly inform the defendant of the charge against which he must defend."[38] We have explained that to prevail on a constructive amendment claim, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial

---

[37] *See United States v. Dove*, 884 F.3d 138, 146, 149 (2d Cir. 2018).

intent that Jane engage in sexual activity for which any person can be charged with a criminal offense in violation of New York law." A-205.

[38] *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021).

likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."[39] A constructive amendment requires reversal.[40]

We cannot conclude that a constructive amendment resulted from the evidence presented by the Government—namely, Jane's testimony—or that it can be implied from the jury note. We have permitted significant flexibility in proof as long as a defendant was "given notice of the core of criminality to be proven at trial."[41] In turn, "[t]he core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview."[42]

We agree with the District Court that the jury instructions, the evidence presented at trial, and the Government's summation captured the core of criminality. As the District Court noted, while the jury note was ambiguous in one sense, it was clear that it referred to the second element of Count Four of the Indictment. Therefore, the District Court correctly directed the jury to that instruction, which "accurately instructed that Count Four had to be predicated on finding

---

[39] *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988).

[40] *See United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012).

[41] *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 310 (2d Cir. 2009) (per curiam) (emphasis omitted).

[42] *D'Amelio*, 683 F.3d at 418 (internal quotation marks omitted).

a violation of New York law."[43] It is therefore not "uncertain whether [Maxwell] was convicted of conduct that was the subject of the grand jury's indictment."[44]

We also cannot conclude that the evidence at trial prejudicially varied from the Indictment. To allege a variance, a defendant "must establish that the evidence offered at trial differs materially from the evidence alleged in the indictment."[45] To prevail and win reversal, the defendant must further show "that substantial prejudice occurred at trial as a result" of the variance.[46] "A defendant cannot demonstrate that he has been prejudiced by a variance where the pleading and the proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense."[47]

For reasons similar to the ones noted above in the context of the constructive amendment, the evidence at trial did not prove facts

---

[43] A-387; *see United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990) ("The trial judge is in the best position to sense whether the jury is able to proceed properly with its deliberations, and [ ] has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.")

[44] *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003).

[45] *Dove*, 884 F.3d at 149

[46] *Id.* (citation and internal quotation marks omitted).

[47] *Salmonese*, 352 F.3d at 621-22 (citation and internal quotation marks omitted); *see also Khalupsky*, 5 F.4th at 294.

"materially different" from the allegations in the Indictment.[48] The evidence indicated that Maxwell transported Jane to New York for sexual abuse and conspired to do the same. Maxwell knew that the evidence also included conduct in New Mexico.[49] Furthermore, Maxwell cannot demonstrate "substantial prejudice." Maxwell received—*over three weeks before trial*—notes of Jane's interview recording the abuse she suffered in New Mexico. This is enough to conclude that Maxwell was not "unfairly and substantially" prejudiced.[50]

### 5. Maxwell's Sentence Was Procedurally Reasonable

Lastly, Maxwell argues that her sentence was procedurally unreasonable because the District Court erred in applying a leadership sentencing enhancement under the Sentencing Guidelines and inadequately explained its above-Guidelines sentence.[51] We disagree.

---

[48] *Dove*, 884 F.3d at 149.

[49] As the District Court found, "[t]he Indictment charged a scheme to sexually abuse underage girls in New York. In service of this scheme, the Indictment alleged that Epstein and the Defendant groomed the victims for abuse at various properties and in various states, including Epstein's ranch in New Mexico." A-393.

[50] *See United States v. Lebedev*, 932 F.3d 40, 54 (2d Cir. 2019) (concluding that a defendant was not "unfairly and substantially" prejudiced because "[t]he government disclosed the evidence and exhibits . . . four weeks prior to trial").

[51] At sentencing, the District Court calculated a Guidelines range of 188 to 235 months' imprisonment and sentenced Maxwell to a slightly above-Guidelines term of 240 months' imprisonment.

We review a sentence for both procedural and substantive reasonableness, which "amounts to review for abuse of discretion."[52] We have explained that procedural error is found when a district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [Section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence."[53] The District Court did none of that. It is important to emphasize that the Sentencing Guidelines "are guidelines—that is, they are truly advisory."[54] A District Court is "generally free to impose sentences outside the recommended range" based on its own "informed and individualized judgment."[55]

With respect to the four-level leadership enhancement, the District Court found that Maxwell "supervised" Sarah Kellen in part because of testimony from two of Epstein's pilots who testified that Kellen was Maxwell's assistant. The District Court found that testimony credible, in part because it was corroborated by other testimony that Maxwell was Epstein's "number two and the lady of the house" in Palm Beach,

---

[52] *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

[53] *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012).

[54] *Cavera*, 550 F.3d at 189.

[55] *Id.*

24

where much of the abuse occurred and where Kellen worked.[56] We therefore hold that the District Court did not err in applying the leadership enhancement.

With respect to the length of the sentence, the District Court properly discussed the sentencing factors when imposing the sentence, and described, at length, Maxwell's "pivotal role in facilitating the abuse of the underaged girls through a series of deceptive tactics."[57] The District Court recognized that the sentence "must reflect the gravity of Ms. Maxwell's conduct, of Ms. Maxwell's offense, the pivotal role she played in facilitating the offense, and the significant and lasting harm it inflicted."[58] And the District Court explained that "a very serious, a very significant sentence is necessary to achieve the purposes of punishment" under 18 U.S.C. § 3553(a). In sum, the District Court did not err by failing to adequately explain its sentence.

## CONCLUSION

To summarize, we hold as follows:

---

[56] A-417.

[57] SA-459.

[58] SA-461.

1. The District Court did not err in holding that Epstein's NPA with USAO-SDFL did not bar Maxwell's prosecution by USAO-SDNY.

2. The District Court did not err in holding that the Indictment was filed within the statute of limitations.

3. The District Court did not abuse its discretion in denying Maxwell's Rule 33 motion for a new trial.

4. The District Court's response to a jury note did not result in a constructive amendment of, or prejudicial variance from, the allegations in the Indictment.

5. The District Court's sentence was procedurally reasonable.

For the foregoing reasons, we **AFFIRM** the District Court's June 29, 2022, judgment of conviction.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**DEBRA ANN LIVINGSTON**
**CHIEF JUDGE**

Date: September 17, 2024
Docket #: 22-1426cr
Short Title: United States of America v. Maxwell

**CATHERINE O'HAGAN WOLFE**
**CLERK OF COURT**

DC Docket #: 1:20-cr-330-1
DC Court: SDNY (NEW YORK CITY)
DC Judge: Nathan

## BILL OF COSTS INSTRUCTIONS

The requirements for filing a bill of costs are set forth in FRAP 39. A form for filing a bill of costs is on the Court's website.

The bill of costs must:
* be filed within 14 days after the entry of judgment;
* be verified;
* be served on all adversaries;
* not include charges for postage, delivery, service, overtime and the filers edits;
* identify the number of copies which comprise the printer's unit;
* include the printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page;
* state only the number of necessary copies inserted in enclosed form;
* state actual costs at rates not higher than those generally charged for printing services in New York, New York; excessive charges are subject to reduction;
* be filed via CM/ECF or if counsel is exempted with the original and two copies.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**DEBRA ANN LIVINGSTON**
**CHIEF JUDGE**
Date: September 17, 2024
Docket #: 22-1426cr
Short Title: United States of America v. Maxwell

**CATHERINE O'HAGAN WOLFE**
**CLERK OF COURT**
DC Docket #: 1:20-cr-330-1
DC Court: SDNY (NEW YORK CITY)
DC Judge: Nathan

## VERIFIED ITEMIZED BILL OF COSTS

Counsel for

_____

respectfully submits, pursuant to FRAP 39 (c) the within bill of costs and requests the Clerk to prepare an itemized statement of costs taxed against the

_____

and in favor of

_____

for insertion in the mandate.

Docketing Fee        _____

Costs of printing appendix (necessary copies _____ ) _____

Costs of printing brief (necessary copies _____ _____) _____

Costs of printing reply brief (necessary copies _____ ) _____

**(VERIFICATION HERE)**

_____
Signature