22-1426-cr
*United States v. Maxwell*

# In the
# United States Court of Appeals
## for the Second Circuit

————————

AUGUST TERM 2023

No. 22-1426-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

GHISLAINE MAXWELL, also known as Sealed Defendant 1,
*Defendant-Appellant*.

————————

On Appeal from the United States District Court for the Southern
District of New York

————————

ARGUED: MARCH 12, 2024
DECIDED: SEPTEMBER 17, 2024

————————

Before: CABRANES, WESLEY, and LOHIER, *Circuit Judges*.

————————

Defendant Ghislaine Maxwell appeals her June 29, 2022, judgment of conviction in the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*). Maxwell was convicted of conspiracy to transport minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 371; transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); and sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(2). She was principally sentenced to concurrent terms of imprisonment of 60 months, 120 months, and 240 months, respectively, to be followed by concurrent terms of supervised release.

On appeal, the questions presented are whether (1) Jeffrey Epstein's Non-Prosecution Agreement with the United States Attorney's Office for the Southern District of Florida barred Maxwell's prosecution by the United States Attorney's Office for the Southern District of New York; (2) a second superseding indictment of March 29, 2021, complied with the statute of limitations; (3) the District Court abused its discretion in denying Maxwell's Rule 33 motion for a new trial based on the claimed violation of her Sixth Amendment right to a fair and impartial jury; (4) the District Court's response to a jury note resulted in a constructive amendment of, or prejudicial variance from, the allegations in the second superseding indictment; and (5) Maxwell's sentence was procedurally reasonable.

Identifying no errors in the District Court's conduct of this complex case, we AFFIRM the District Court's June 29, 2022, judgment of conviction.

—————

ANDREW ROHRBACH, Assistant United States
Attorney (Maurene Comey, Alison Moe,
Lara Pomerantz, Won S. Shin, Assistant
United States Attorneys, *on the brief*), *for*
Damian Williams, United States Attorney
for the Southern District of New York, New
York, NY, *for Appellee*.

DIANA FABI SAMSON (Arthur L. Aidala, John
M. Leventhal, *on the brief*), Aidala Bertuna &
Kamins PC, New York, NY, *for Defendant-
Appellant*.

—————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant Ghislaine Maxwell appeals her June 29, 2022,
judgment of conviction in the United States District Court for the
Southern District of New York (Alison J. Nathan, *Judge*). Maxwell was
convicted of conspiracy to transport minors with intent to engage in
criminal sexual activity in violation of 18 U.S.C. § 371; transportation
of a minor with intent to engage in criminal sexual activity in violation
of 18 U.S.C. § 2423(a); and sex trafficking of a minor in violation of 18
U.S.C. § 1591(a) and (b)(2). The District Court imposed concurrent
terms of imprisonment of 60 months, 120 months, and 240 months,
respectively, to be followed by concurrent terms of supervised release

3

of three years, three years, and five years, respectively. The District Court also imposed a fine of $250,000 on each count for a total of $750,000.

On appeal, the questions presented are (1) whether Jeffrey Epstein's Non-Prosecution Agreement ("NPA") with the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL") barred Maxwell's prosecution by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"); (2) whether Maxwell's second superseding indictment of March 29, 2021 (the "Indictment") complied with the statute of limitations; (3) whether the District Court abused its discretion in denying Maxwell's Rule 33 motion for a new trial based on the claimed violation of her Sixth Amendment right to a fair and impartial jury; (4) whether the District Court's response to a jury note resulted in a constructive amendment of, or prejudicial variance from, the allegations in the Indictment; and (5) whether Maxwell's sentence was procedurally reasonable.

We hold that Epstein's NPA did not bar Maxwell's prosecution by USAO-SDNY as the NPA does not bind USAO-SDNY. We hold that Maxwell's Indictment complied with the statute of limitations as 18 U.S.C. § 3283 extended the time to bring charges of sexual abuse for offenses committed before the date of the statute's enactment. We further hold that the District Court did not abuse its discretion in denying Maxwell's Rule 33 motion for a new trial based on one juror's erroneous answers during *voir dire.* We also hold that the District Court's response to a jury note did not result in a constructive amendment of, or prejudicial variance from, the allegations in the

Indictment. Lastly, we hold that Maxwell's sentence is procedurally reasonable.

Accordingly, we **AFFIRM** the District Court's June 29, 2022, judgment of conviction.

## I. BACKGROUND [1]

Defendant Ghislaine Maxwell coordinated, facilitated, and contributed to Jeffrey Epstein's sexual abuse of women and underage girls. Starting in 1994, Maxwell groomed numerous young women to engage in sexual activity with Epstein by building friendships with these young women, gradually normalizing discussions of sexual topics and sexual abuse. Until about 2004, this pattern of sexual abuse continued as Maxwell provided Epstein access to underage girls in various locations in the United States.

### 1. Epstein's Non-Prosecution Agreement

In September 2007, following state and federal investigations into allegations of Epstein's unlawful sexual activity, Epstein entered into an NPA with USAO-SDFL. In the NPA, Epstein agreed to plead guilty to one count of solicitation of prostitution, in violation of Florida

---

[1] Unless otherwise noted, the following facts are drawn from the evidence presented at trial and described in the light most favorable to the Government. *See United States v. Litwok*, 678 F.3d 208, 210-11 (2d Cir. 2012) ("Because this is an appeal from a judgment of conviction entered after a jury trial, the [ ] facts are drawn from the trial evidence and described in the light most favorable to the Government.").

Statutes § 796.07,[2] and to one count of solicitation of minors to engage in prostitution, in violation of Florida Statutes § 796.03.[3] He agreed to receive a sentence of eighteen months' imprisonment on the two charges. In consideration of Epstein's agreement, the NPA states that "the United States also agrees that it will not institute any criminal charges against any potential co-conspirators of Epstein, including but not limited to Sarah Kellen, Adriana Ross, Lesley Groff, or Nadia Marcinkova."[4]

### 2. Maxwell's Indictment and Trial-Related Proceedings

The Indictment filed against Maxwell contained eight counts, six of which proceeded to trial.[5] Prior to the commencement of trial,

---

[2] Florida Statutes § 796.07 provides in relevant part:

(2) It is unlawful:

(f) To solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation.

[3] Florida Statutes § 796.03, which has since been repealed, provided in relevant part: "A person who procures for prostitution, or causes to be prostituted, any person who is under the age of 18 years commits a felony of the second degree."

[4] A-178.

[5] Count One charged Maxwell with conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371. Count Two charged Maxwell with enticement of a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2. Count Three charged Maxwell with conspiracy to transport minors with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 371. Count Four charged Maxwell with transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §§ 2423(a) and 2. Count Five charged Maxwell with sex trafficking conspiracy, in

prospective jurors completed a lengthy questionnaire, with several questions raising issues relevant to the trial. Based on the completed questionnaires, the parties selected prospective jurors to proceed to in-person *voir dire*. The District Court ultimately empaneled a jury.

During the four-and-a-half-week jury trial, the Government presented evidence of the repeated sexual abuse of six girls. At the conclusion of trial, on December 29, 2021, the jury found Maxwell guilty on all but one count.[6]

Following the verdict, Juror 50 gave press interviews during which he stated that he was a survivor of child sexual abuse.[7] In his answers to the written jury questionnaire, however, Juror 50 answered "no" to three questions asking whether he or a friend or family member had ever been the victim of a crime; whether he or a friend or family member had ever been the victim of sexual harassment, sexual abuse, or sexual assault; and whether he or a friend or family member had ever been accused of sexual harassment, sexual abuse, or sexual

---

violation of 18 U.S.C. § 371. Count Six charged Maxwell with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and 2. Counts Seven and Eight charged Maxwell with perjury, in violation of 18 U.S.C. § 1623. The perjury charges were severed from the remaining charges and ultimately dismissed at sentencing.

[6] The jury found Maxwell guilty on Counts One, Three, Four, Five, and Six. Maxwell was acquitted on Count Two.

[7] Consistent with a juror anonymity order entered for trial, the parties and the District Court referred to the jurors by pseudonym.

assault.[8] Upon learning of the interviews, the Government filed a letter on January 5, 2022, requesting a hearing; Maxwell then moved for a new trial under Federal Rule of Criminal Procedure 33. On March 8, 2022, the District Court held a hearing and Juror 50 testified—under grant of immunity—that his answers to three questions related to sexual abuse in the jury questionnaire were not accurate but that the answers were an inadvertent mistake and that his experiences did not affect his ability to be fair and impartial. Finding Juror 50's testimony to be credible, the District Court denied Maxwell's motion for a new trial in a written order.

Maxwell was subsequently sentenced to a term of 240 months' imprisonment to be followed by five years' supervised release, and the

---

[8] Question 2 asked "[h]ave you, or any of your relatives or close friends, ever been a victim of a crime?" Question 48 asked "[h]ave you or a friend or family member ever been the victim of sexual harassment, sexual abuse, or sexual assault? (This includes actual or attempted sexual assault or other unwanted sexual advance, including by a stranger, acquaintance, supervisor, teacher, or family member.)" Finally, Question 49 asked

> [h]ave you or a friend or family member ever been accused of sexual harassment, sexual abuse, or sexual assault? (This includes both formal accusations in a court of law or informal accusations in a social or work setting of actual or attempted sexual assault or other unwanted sexual advance, including by a stranger, acquaintance, supervisor, teacher, or family member.

*See* A-299, A-310.

District Court imposed a $750,000 fine and a $300 mandatory special assessment. This appeal followed.

## II. DISCUSSION

### 1. The NPA Between Epstein and USAO-SDFL Did Not Bar Maxwell's Prosecution by USAO-SDNY

Maxwell sought dismissal of the charges in the Indictment on the grounds that the NPA made between Epstein and USAO-SDFL immunized her from prosecution on all counts as a third-party beneficiary of the NPA. The District Court denied the motion, rejecting Maxwell's arguments. We agree. We review *de novo* the denial of a motion to dismiss an indictment.[9]

In arguing that the NPA barred her prosecution by USAO-SDNY, Maxwell cites the portion of the NPA in which "the United States [ ] agree[d] that it w[ould] not institute any criminal charges against any potential co-conspirators of Epstein."[10] We hold that the NPA with USAO-SDFL does not bind USAO-SDNY.

It is well established in our Circuit that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement

---

[9] *See, e.g., United States v. Walters*, 910 F.3d 11, 22 (2d Cir. 2018).

[10] A-178.

contemplates a broader restriction."[11] And while Maxwell contends that we cannot apply *Annabi* to an agreement negotiated and executed outside of this Circuit, we have previously done just that.[12] Applying *Annabi*, we conclude that the NPA did not bar Maxwell's prosecution by USAO-SDNY. There is nothing in the NPA that affirmatively shows that the NPA was intended to bind multiple districts. Instead, where the NPA is not silent, the agreement's scope is *expressly limited* to the Southern District of Florida. The NPA makes clear that if Epstein fulfilled his obligations, he would no longer face charges *in that district*:

> After timely fulfilling all the terms and conditions of the Agreement, no prosecution for the offenses set out on pages 1 and 2 of this Agreement, nor any other offenses that have been the subject of the joint investigation by the Federal Bureau of Investigation and the United States Attorney's Office, nor any

---

[11] *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir. 1985). We recognize that circuits have been split on this issue for decades. *See United States v. Harvey*, 791 F.2d 294, 303 (4th Cir. 1986); *United States v. Gebbie*, 294 F.3d 540, 550 (3d Cir. 2002).

[12] *See, e.g.*, *United States v. Prisco*, 391 F. App'x 920, 921 (2d Cir. 2010) (summary order) (applying *Annabi* to plea agreement entered into in the District of New Jersey); *United States v. Gonzalez*, 93 F. App'x 268, 270 (2d Cir. 2004) (summary order) (same, to agreement entered into in the District of New Mexico). Nor does *Annabi*, as Maxwell contends, apply only where subsequent charges are "sufficiently distinct" from charges covered by an earlier agreement. In *Annabi*, this Court rejected an interpretation of a prior plea agreement that rested on the Double Jeopardy Clause, reasoning that even if the Double Jeopardy Clause applied, the subsequent charges were "sufficiently distinct" and therefore fell outside the Clause's protections. *Annabi*, 771 F.2d at 672. This Court did not, however, conclude that the rule of construction it announced depended on the similarities between earlier and subsequent charges.

offenses that arose from the Federal Grand Jury investigation will be instituted *in this District*, and the charges against Epstein if any, will be dismissed.[13]

The only language in the NPA that speaks to the agreement's scope is limiting language.

The negotiation history of the NPA, just as the text, fails to show that the agreement was intended to bind other districts. Under our Court's precedent, the negotiation history of an NPA can support an inference that an NPA "affirmatively" binds other districts.[14] Yet, the actions of USAO-SDFL do not indicate that the NPA was intended to bind other districts.

The United States Attorney's Manual that was operable during the negotiations of the NPA required that:

No district or division shall make any agreement, including any agreement not to prosecute, which purports to bind any other district(s) or division without the express written approval of

---

[13] A-175 (emphasis added). The agreement's scope is also limited in an additional section:

THEREFORE, on the authority of R. Alexander Acosta, United States Attorney for the Southern District of Florida, *prosecution in this District* for these offenses shall be deferred in favor of prosecution by the State of Florida, provided that Epstein abides by the following conditions and the requirements of this Agreement set forth below.

*Id.* (emphasis added).

[14] *See United States v. Russo*, 801 F.2d 624, 626 (2d Cir. 1986).

the United States Attorney(s) in each affected district and/or the Assistant Attorney General of the Criminal Division.[15]

Nothing before us indicates that USAO-SDNY had been notified or had approved of Epstein's NPA with USAO-SDFL and intended to be bound by it. And the Assistant Attorney General for the Criminal Division stated in an interview with the Office of Professional Responsibility that she "played no role" in the NPA, either by reviewing or approving the agreement.

The history of the Office of the United States Attorney is instructive as to the scope of their actions and duties. The Judiciary Act of 1789 created the Office of the United States Attorney, along with the office of the Attorney General. More specifically, the Judiciary Act provided for the appointment, in each district, of a "person learned in the law to act as attorney for the United States *in such district*, who shall be sworn or affirmed to the faithful execution of his office, whose duty it shall be to prosecute *in such district* all delinquents for crimes and offences, cognizable under the authority of the United States, and all civil actions in which the United States shall be concerned."[16] The Judiciary Act thus emphasized that U.S. Attorneys would enforce the law of the United States but did not determine that the actions of one U.S. Attorney could bind other districts, let alone the entire nation. In fact, the phrase "in such district," repeated twice, implies that the scope of

---

[15] United States Attorney's Manual § 9-27.641 (2007).

[16] An Act to Establish the Judicial Courts of the United States, ch. 20, § 35, 1 Stat. 73, 92-93 (1789) (emphasis added).

the actions and the duties of the U.S. Attorneys would be limited to their own districts, absent any express exceptions.

Since 1789, while the number of federal districts has grown significantly, the duties of a U.S. Attorney and their scope remain largely unchanged. By statute, U.S. Attorneys, "within [their] district, shall (1) prosecute for all offenses against the United States; (2) prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned."[17] Again, the scope of the duties of a U.S. Attorney is cabined to their specific district unless otherwise directed.[18]

In short, *Annabi* controls the result here. Nothing in the text of the NPA or its negotiation history suggests that the NPA precluded USAO-SDNY from prosecuting Maxwell for the charges in the

---

[17] 28 U.S.C. § 547.

[18] This does not suggest that there are no instances in which a U.S. Attorney's powers do not extend beyond their districts. For instance, under 28 U.S.C. § 515 a U.S. Attorney can represent the Government or participate in proceedings in other districts, but only when specifically directed by the Attorney General:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Indictment. The District Court therefore correctly denied Maxwell's motion without an evidentiary hearing.

## 2. The Indictment Is Timely

Maxwell argues that Counts Three and Four of the Indictment are untimely because they do not fall within the scope of offenses involving the sexual or physical abuse or kidnapping of a minor and thereby do not fall within the extended statute of limitations provided by § 3283.[19] Separately, Maxwell contends that the Government cannot apply the 2003 amendment to § 3283 that extended the statute of limitations to those offenses that were committed before the enactment into law of the provision. On both points, we disagree and hold that the District Court correctly denied Maxwell's motions to dismiss the charges as untimely. We review *de novo* the denial of a motion to dismiss an indictment and the application of a statute of limitations.[20]

*First*, Counts Three and Four of the Indictment are offenses involving the sexual abuse of minors. The District Court properly applied *Weingarten v. United States*.[21] In *Weingarten*, we explained that Congress intended courts to apply § 3283 using a case-specific

---

[19] 18 U.S.C. § 3283 provides: "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."

[20] *United States v. Sampson*, 898 F.3d 270, 276, 278 (2d Cir. 2018).

[21] 865 F.3d 48, 58-60 (2d Cir. 2017); *see also United States v. Maxwell*, 534 F. Supp. 3d 299, 313-14 (S.D.N.Y. 2021).

14

approach as opposed to a "categorical approach."[22] We see no reason to depart from our reasoning in *Weingarten*. Accordingly, the question presented here is whether the charged offenses involved the sexual abuse of a minor for the purposes of § 3283 based on the facts of the case. Jane, one of the women who testified at trial, gave evidence that she had been sexually abused when transported across state lines as a minor. Counts Three and Four thus qualify as offenses, and § 3283 applies to those offenses.

*Second*, Maxwell argues that Counts Three, Four, and Six of the Indictment are barred by the statute of limitations because the extended statute of limitations provided by the 2003 amendment to § 3283 does not apply to pre-enactment conduct. In *Landgraf v. USI Film Products*, the Supreme Court held that a court, in deciding whether a statute applies retroactively, must first "determine whether Congress has expressly prescribed the statute's proper reach."[23] If Congress has done so, "the inquiry ends, and the court enforces the

---

[22] The "categorical approach" is a method of statutory interpretation that requires courts to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" for sentencing and immigration purposes. *Taylor v. United States*, 495 U.S. 575, 600 (1990). We properly reasoned in *Weingarten* that § 3283 met none of the conditions listed by *Taylor* that might require application of the categorical approach. *See Weingarten*, 865 F.3d at 58-60. First, "[t]he language of § 3283[] . . . reaches beyond the offense and its legal elements to the conduct 'involv[ed]' in the offense." *Id.* at 59-60. Second, legislative history suggests that Congress intended § 3283 to be applied broadly. *Id.* at 60. Third, a case-specific approach would not produce practical difficulties or potential unfairness. *Id.*

[23] 511 U.S. 244, 280 (1994); *see also Weingarten*, 865 F.3d at 54-55.

15

statute as it is written."[24] If the statute "is ambiguous or contains no express command regarding retroactivity, a reviewing court must determine whether applying the statute to antecedent conduct would create presumptively impermissible retroactive effects."[25]

Here, the inquiry is straightforward. In 2003, Congress amended § 3283 to provide: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child."[26] The text of § 3283—that *no* statute of limitations that would *otherwise* preclude prosecution of these offenses will apply—plainly requires that it prevent the application of any statute of limitations that would otherwise apply to past conduct.

The statutory text makes clear that Congress intended to extend the time to bring charges of sexual abuse for pre-enactment conduct as the prior statute of limitations was inadequate. This is enough to conclude that the PROTECT Act's amendment to § 3283 applies to Maxwell's conduct as charged in the Indictment.

---

[24] *In re Enter. Mortg. Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401, 406 (2d Cir. 2004) (citing *Landgraf*, 511 U.S. at 280).

[25] *Weingarten*, 865 F.3d at 55 (citation and internal quotation marks omitted).

[26] PROTECT Act, Pub. L. No. 108-21, § 202, 117 Stat. 650, 660 (2003).

### 3. The District Court Did Not Abuse Its Discretion in Denying Maxwell's Motion for a New Trial

Maxwell contends that she was deprived of her constitutional right to a fair and impartial jury because Juror 50 failed to accurately respond to several questions related to his history of sexual abuse as part of the jury questionnaire during jury selection. Following a special evidentiary hearing, the District Court denied Maxwell's motion for a new trial.

We review a District Court's denial of a motion for a new trial for abuse of discretion.[27] We have been extremely reluctant to "haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences."[28] While courts can "vacate any judgment and grant a new trial if the interest of justice so requires," Fed. R. Crim. P. 33(a), they should do so "sparingly" and only in "the most extraordinary circumstances."[29] A district court "has

---

[27] *See Rivas v. Brattesani*, 94 F.3d 802, 807 (2d Cir. 1996). "[W]e are mindful that a judge has not abused her discretion simply because she has made a different decision than we would have made in the first instance." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). We have repeatedly explained that the term of art "abuse of discretion" includes errors of law, a clearly erroneous assessment of the evidence, or "a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citation and internal quotation marks omitted).

[28] *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983).

[29] *Ferguson*, 246 F.3d at 134.

broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced" and is shown deference on appeal.[30]

A Rule 33 motion based on a juror's alleged erroneous response during *voir dire* is governed by *McDonough Power Equipment, Inc. v. Greenwood*.[31] Under *McDonough*, a party seeking a new trial "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."[32]

The District Court applied the *McDonough* standard, found Juror 50's testimony credible, and determined that Juror 50's erroneous responses during *voir dire* were "not deliberately incorrect" and that "he would *not* have been struck for cause if he had provided accurate responses to the questionnaire."[33] In fact, as the District Court noted, Maxwell did not challenge the inclusion of other jurors who disclosed past experience with sexual abuse, assault, or harassment. This is

---

[30] *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) (citation and internal quotation marks omitted).

[31] 464 U.S. 548 (1984).

[32] *Id.* at 556.

[33] A-340 (emphasis added). The Supreme Court reminds us that "[t]o invalidate the result of a [ ] trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555.

enough; the District Court did not abuse its discretion in denying Maxwell's motion for a new trial.[34]

### 4. The District Court's Response to a Jury Note Did Not Result in a Constructive Amendment of, or Prejudicial Variance from, the Allegations in the Indictment

During jury deliberations, the jury sent the following jury note regarding Count Four of the Indictment:

> Under Count Four (4), if the defendant aided in the transportation of Jane's return flight, but not the flight to New Mexico where/if the intent was for Jane to engage in sexual activity, can she be found guilty under the second element?[35]

The District Court determined that it would not respond to the note directly because it was difficult to "parse factually and legally" and instead referred the jury to the second element of Count Four.[36]

---

[34] Nor did the District Court err in questioning Juror 50 rather than allowing the parties to do so. In conducting a hearing on potential juror misconduct, "[w]e leave it to the district court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera." *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989). And while Maxwell contends that the District Court improperly limited questioning about Juror 50's role in deliberations, she both waived that argument below and fails to show here how any such questioning would not be foreclosed by Federal Rule of Evidence 606(b).

[35] A-238.

[36] A-207-221. The District Court's instruction on the second element of Count Four required the jury to find that "Maxwell knowingly transported Jane in interstate commerce with the

Maxwell subsequently filed a letter seeking reconsideration of the District Court's response, claiming that this response resulted in a constructive amendment or prejudicial variance. The District Court declined to reconsider its response and denied Maxwell's motion.

Maxwell appeals the District Court's denial and argues that the alleged constructive amendment is a *per se* violation of the Grand Jury Clause of the Fifth Amendment. Specifically, Maxwell argues that testimony about a witness's sexual abuse in New Mexico presented the jury with another basis for conviction, which is distinct from the charges in the Indictment. Similarly, Maxwell argues that this testimony resulted in a prejudicial variance from the Indictment. We disagree and affirm the District Court's denial.

We review the denial of a motion claiming constructive amendment or prejudicial variance *de novo*.[37] To satisfy the Fifth Amendment's Grand Jury Clause, "an indictment must contain the elements of the offense charged and fairly inform the defendant of the charge against which he must defend."[38] We have explained that to prevail on a constructive amendment claim, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial

---

intent that Jane engage in sexual activity for which any person can be charged with a criminal offense in violation of New York law." A-205.

[37] *See United States v. Dove*, 884 F.3d 138, 146, 149 (2d Cir. 2018).

[38] *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021).

likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."[39] A constructive amendment requires reversal.[40]

We cannot conclude that a constructive amendment resulted from the evidence presented by the Government—namely, Jane's testimony—or that it can be implied from the jury note. We have permitted significant flexibility in proof as long as a defendant was "given notice of the core of criminality to be proven at trial."[41] In turn, "[t]he core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview."[42]

We agree with the District Court that the jury instructions, the evidence presented at trial, and the Government's summation captured the core of criminality. As the District Court noted, while the jury note was ambiguous in one sense, it was clear that it referred to the second element of Count Four of the Indictment. Therefore, the District Court correctly directed the jury to that instruction, which "accurately instructed that Count Four had to be predicated on finding

---

[39] *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988).

[40] *See United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012).

[41] *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 310 (2d Cir. 2009) (per curiam) (emphasis omitted).

[42] *D'Amelio*, 683 F.3d at 418 (internal quotation marks omitted).

a violation of New York law."[43] It is therefore not "uncertain whether [Maxwell] was convicted of conduct that was the subject of the grand jury's indictment."[44]

We also cannot conclude that the evidence at trial prejudicially varied from the Indictment. To allege a variance, a defendant "must establish that the evidence offered at trial differs materially from the evidence alleged in the indictment."[45] To prevail and win reversal, the defendant must further show "that substantial prejudice occurred at trial as a result" of the variance.[46] "A defendant cannot demonstrate that he has been prejudiced by a variance where the pleading and the proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense."[47]

For reasons similar to the ones noted above in the context of the constructive amendment, the evidence at trial did not prove facts

---

[43] A-387; *see United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990) ("The trial judge is in the best position to sense whether the jury is able to proceed properly with its deliberations, and [ ] has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.")

[44] *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003).

[45] *Dove*, 884 F.3d at 149

[46] *Id.* (citation and internal quotation marks omitted).

[47] *Salmonese*, 352 F.3d at 621-22 (citation and internal quotation marks omitted); *see also Khalupsky*, 5 F.4th at 294.

"materially different" from the allegations in the Indictment.[48] The evidence indicated that Maxwell transported Jane to New York for sexual abuse and conspired to do the same. Maxwell knew that the evidence also included conduct in New Mexico.[49] Furthermore, Maxwell cannot demonstrate "substantial prejudice." Maxwell received—*over three weeks before trial*—notes of Jane's interview recording the abuse she suffered in New Mexico. This is enough to conclude that Maxwell was not "unfairly and substantially" prejudiced.[50]

### 5.  Maxwell's Sentence Was Procedurally Reasonable

Lastly, Maxwell argues that her sentence was procedurally unreasonable because the District Court erred in applying a leadership sentencing enhancement under the Sentencing Guidelines and inadequately explained its above-Guidelines sentence.[51]  We disagree.

---

[48] *Dove*, 884 F.3d at 149.

[49] As the District Court found, "[t]he Indictment charged a scheme to sexually abuse underage girls in New York. In service of this scheme, the Indictment alleged that Epstein and the Defendant groomed the victims for abuse at various properties and in various states, including Epstein's ranch in New Mexico." A-393.

[50] *See United States v. Lebedev*, 932 F.3d 40, 54 (2d Cir. 2019) (concluding that a defendant was not "unfairly and substantially" prejudiced because "[t]he government disclosed the evidence and exhibits . . . four weeks prior to trial").

[51] At sentencing, the District Court calculated a Guidelines range of 188 to 235 months' imprisonment and sentenced Maxwell to a slightly above-Guidelines term of 240 months' imprisonment.

We review a sentence for both procedural and substantive reasonableness, which "amounts to review for abuse of discretion."[52] We have explained that procedural error is found when a district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [Section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence."[53] The District Court did none of that. It is important to emphasize that the Sentencing Guidelines "are guidelines—that is, they are truly advisory."[54] A District Court is "generally free to impose sentences outside the recommended range" based on its own "informed and individualized judgment."[55]

With respect to the four-level leadership enhancement, the District Court found that Maxwell "supervised" Sarah Kellen in part because of testimony from two of Epstein's pilots who testified that Kellen was Maxwell's assistant. The District Court found that testimony credible, in part because it was corroborated by other testimony that Maxwell was Epstein's "number two and the lady of the house" in Palm Beach,

---

[52] *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

[53] *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012).

[54] *Cavera*, 550 F.3d at 189.

[55] *Id.*

where much of the abuse occurred and where Kellen worked.[56] We therefore hold that the District Court did not err in applying the leadership enhancement.

With respect to the length of the sentence, the District Court properly discussed the sentencing factors when imposing the sentence, and described, at length, Maxwell's "pivotal role in facilitating the abuse of the underaged girls through a series of deceptive tactics."[57] The District Court recognized that the sentence "must reflect the gravity of Ms. Maxwell's conduct, of Ms. Maxwell's offense, the pivotal role she played in facilitating the offense, and the significant and lasting harm it inflicted."[58] And the District Court explained that "a very serious, a very significant sentence is necessary to achieve the purposes of punishment" under 18 U.S.C. § 3553(a). In sum, the District Court did not err by failing to adequately explain its sentence.

## CONCLUSION

To summarize, we hold as follows:

---

[56] A-417.

[57] SA-459.

[58] SA-461.

1.  The District Court did not err in holding that Epstein's NPA with USAO-SDFL did not bar Maxwell's prosecution by USAO-SDNY.

2. The District Court did not err in holding that the Indictment was filed within the statute of limitations.

3. The District Court did not abuse its discretion in denying Maxwell's Rule 33 motion for a new trial.

4. The District Court's response to a jury note did not result in a constructive amendment of, or prejudicial variance from, the allegations in the Indictment.

5. The District Court's sentence was procedurally reasonable.

For the foregoing reasons, we **AFFIRM** the District Court's June 29, 2022, judgment of conviction.